Commonwealth *v.* Rosado.

## COMMONWEALTH *VS.* FRANK ROSADO.

Hampden. May 4, 1998. - July 23, 1998.

Present (Sitting at Pittsfield): WILKINS, C.J., ABRAMS, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Identification. Practice, Criminal,* Instructions to jury. *Evidence,* Identification.

In a criminal case in which a witness made an identification of the defendant at the scene based on his clothing, but not at trial, and so testified, as did a police officer, the defendant was entitled to an instruction to the jury that they could consider the possibility that the witness had made an honest but mistaken identification; however, the judge's erroneous refusal to give such an instruction was not prejudicial where it could be said with fair assurance that the jury would not have reached a different conclusion had the instruction been given. [78-81]

INDICTMENTS found and returned in the Superior Court Department on June 29, 1994.

The cases were tried before *John F. Moriarty,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Deborah Ahlstrom,* Assistant District Attorney, for the Commonwealth.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

FRIED, J. The defendant was convicted of an attempt to break and enter in the daytime and possession of burglarious implements. The Appeals Court reversed the convictions, *Commonwealth* v. *Rosado,* 43 Mass. App. Ct. 381 (1997), finding error in the judge's refusal to give an instruction on the possibility of a witness making a "good faith error" in identifying the defendant as the burglar. See *Commonwealth* v. *Pressley,* 390 Mass. 617, 620 (1983). We granted the Commonwealth's application for further appellate review. We agree with the Appeals Court that such an instruction should have been given but conclude that the error was not prejudicial and affirm the defendant's convictions.

I

A concrete well — about four feet wide, twenty to thirty feet long, and about four and one-half feet deep — leads to the entrance of Darryl Siches's basement apartment which is located in a three-story building at 284 Suffolk Street in Holyoke. Siches's neighbor, Hector Esparra, lives on the first floor of a two-story apartment building at 282 Suffolk Street.

Around noon on May 11, 1994, Esparra stepped out onto his porch and saw a bicycle parked near Siches's apartment. Esparra walked toward the bicycle, and, from a fire lane running between the two buildings, he saw a person trying to open the door to Siches's apartment with a screwdriver. Esparra could not see the burglar's face, but noticed that the burglar was wearing a "black and red hooded sweater" or "sweatshirt." Esparra went into a next-door neighbor's apartment and telephoned the police.

When Esparra went back outside, the police had already arrived. It is not clear exactly how much time elapsed between Esparra's first seeing the burglar and the arrival of the police at the scene. Esparra testified that it was about fifteen minutes. But in responding to subsequent questions by the prosecutor, Esparra also testified that he spent about three minutes getting from where he first saw the burglar to his neighbor's apartment, one minute talking to the police on the telephone, and one minute talking to the neighbor before he went back outside. Officer William Lempke of the Holyoke police department was in front of 284 Suffolk Street when he received the dispatch for that location at approximately noon on May 11, 1994. He responded immediately, and was at the scene for approximately two minutes when Officer Greg Judge arrived. Officer Judge was only about eight blocks away when he received a radio dispatch to 284 Suffolk Street at approximately noon on May 11, 1994. It took him less than one minute to arrive at that address.

One of the police officers "signaled" to Esparra as if to ask "Where is he?" From the porch, Esparra pointed to the basement apartment. The officers went down the stairs to the concrete well, and noticed that a screen door was propped open. The apartment door was closed. But, on examination, the officers observed pry marks, two by the lock of the door and two above it. The metal cover of the lock was on the ground. There were also slivers of wood on the ground by the door.

The officers saw the defendant crouched down in the corner of the basement well, approximately ten feet from the apartment door. Officer Lempke patted down the defendant and found three screwdrivers tucked in the front of the defendant's pants. When Officer Lempke asked the defendant what he was doing there, the defendant responded that he was there to smoke some marihuana. Officer Lempke inspected the area, but found nothing to corroborate the defendant's explanation. There was no burnt match, paraphernalia, a leftover marihuana cigarette, or any hint of marihuana smoke. The defendant testified later that he swallowed the "joint" he was smoking when he saw police approaching the area. He also testified that he had used his screwdrivers to fix his sister's stereo earlier in the day.

The officers brought the defendant up from the basement well and placed him in the rear of Officer Judge's cruiser. Officer Judge asked Esparra if the defendant was the person he had seen earlier at the apartment door, and Esparra identified him. Esparra testified that he recognized the defendant by his clothing.

At the close of final arguments, defense counsel proposed a set of instructions that would have advised the jury of the possibility of Esparra's having made a good faith error in identifying the defendant. The judge gave instructions that enumerated factors that the jury should take into consideration in evaluating Esparra's credibility, but did not give the proposed instructions on good faith error. The jury convicted the defendant of attempting to break and enter in the daytime and of possession of burglarious implements.

The Appeals Court held that the instruction on good faith error in identification that the defense counsel requested was required under *Commonwealth v. Pressley*, 390 Mass. 617, 620 (1983), and that the judge's refusal to give the instruction required reversal.

## II

In *Commonwealth v. Pressley*, *supra* at 620, we held that "[f]airness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it." See *Commonwealth v. Rodriguez*, 378 Mass. 296, 302 (1979) ("Although the judge gave detailed instructions to the jury on the subject of 'how do we decide who[m] we

believe,' he failed entirely to mention that the victim might honestly have been mistaken in her identification of the defendant"). There may be cases in which such an instruction, though requested, is not required. The *Pressley* court stated:

> "We do not suggest that in every case in which the issue of identification plays a viable role that a judge is required to give a 'good faith error' instruction. There may be cases in which the parties are so well known to each other or so closely related that under sufficient lighting and with appropriate physical proximity, the identification by the [witness] is either true or the [witness] is lying."

*Commonwealth* v. *Pressley, supra* at 619. The defendant requested an instruction on the possibility of a good faith mistake in Esparra's identification of the defendant as the burglar. The judge's refusal to give the requested instruction was clearly erroneous. This is not such a case as requires an exception to the *Pressley* rule.[1] The judge's assertion that there was no identification is difficult to understand — especially given that he had earlier admitted Officer Judge's testimony regarding Esparra's identification of the defendant on the ground that evidence of pretrial identifications forms an exception to the hearsay rule.

### III

Although we agree with the Appeals Court that the requested instruction should have been given, the error was not prejudicial. An error is not prejudicial only if the Commonwealth can show "with fair assurance . . . that the judgment was not substantially swayed" by it. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). See *Commonwealth* v. *Judge*, 420 Mass. 433, 441-442 (1995); *Commonwealth* v. *Angelone*, 413 Mass. 82, 86-88 (1992); *Commonwealth* v. *Zagranski*, 408 Mass. 278, 288-289 (1990); *Commonwealth* v. *Pressley, supra* at 620 ("The failure to give [the] instruction [on the possibility of good faith

---

[1]As we explain in Part III, we conclude that given the circumstances of this case the failure to give the *Pressley* instruction was not prejudicial. See *Commonwealth* v. *Pressley*, 390 Mass. 617 (1983). Those circumstances, however, are too particular to this case to suggest a further generic exception to the per se rule in *Pressley*. All we conclude in Part III is that the error in omitting the *Pressley* instruction may on occasion, like any error, be nonprejudicial.

mistakes in identification] at this defendant's trial was particularly prejudicial because the jury might very well have declined to conclude that the victim lied, but may have been more inclined to believe that she was honestly mistaken"); *Commonwealth* v. *Helfant*, 398 Mass. 214, 223 (1986). See generally *Kotteakos* v. *United States*, 328 U.S. 750, 765 (1946). So in this case the failure to give the *Pressley* instruction was nonprejudicial only if the Commonwealth can convince us "with fair assurance" that that failure did not "substantially sway[]" the outcome of the case. *Commonwealth* v. *Flebotte, supra.*[2]

We are convinced "with fair assurance" that the jury would not have reached a different conclusion had the *Pressley* instruction been given. Esparra first saw the burglar wearing a "black and red hooded sweater" or "sweatshirt," and later identified the defendant based on this same clothing. This identification was corroborated to an extent by Officer Judge's testimony that the defendant, when seized, was wearing a "black, light jacket," and by Officer Lempke's discovery of three screwdrivers tucked in the front of the defendant's pants. Further substantiating the accuracy of Esparra's identification is the short interval that elapsed between Esparra's first spotting the burglar at the door of Siches's basement apartment and the police officers' arrival at the scene. Esparra's initial estimate of this interval as fifteen minutes seems an obvious error given his answers to subsequent

---

[2]The instant case must be distinguished from cases in which the error was not in jury instructions, but rather in other processes of generating or presenting evidence. See, e.g., *Commonwealth* v. *Jones*, 423 Mass. 99 (1996) (identification witness had two highly suggestive confrontations with the defendant before trial); *Commonwealth* v. *Rosa*, 412 Mass. 147 (1992) (prosecutor in his closing argument improperly urged the jury to use testimony, admitted for the limited purpose of impeachment, as substantive evidence to cast doubt on defendant's alibi and to support eyewitness identification). In that type of case the Commonwealth must show that the erroneous admission of the evidence or the prosecutor's improper reference to testimony was nonprejudicial. See, e.g., *Commonwealth* v. *Jones, supra* at 106; *Commonwealth* v. *Rosa, supra* at 156-160. In a case like the instant one, the Commonwealth must show that the failure to give the *Pressley* instruction was nonprejudicial. The Appeals Court reasoned that, "we cannot know whether Esparra's connection of the defendant with what he had earlier seen may have been a determinative factor when the jurors deliberated." *Commonwealth* v. *Rosado*, 43 Mass. App. Ct. 381, 384 (1997). The error at issue in the instant case, however, was not in the identification procedure, but rather in the judge's refusal to give the *Pressley* instructions, and it is the effect of that error which we must gauge.

428 Mass. 76 (1998)

questioning by the prosecutor and the officers' own testimony as to how quickly they arrived at the scene. At most, the interval seems to have been about five minutes. The sheer implausibility of the defendant's own alibi also adds to our confidence in the jury's verdict. He testified that he had stepped into the basement well to smoke some marihuana, but the officers found no trace of any such activity.

In conclusion, the judge's refusal to include the *Pressley* instruction in his charge was error, but not prejudicial. The defendant's convictions are affirmed.

*So ordered.*