Town of Boxford *vs.* Massachusetts Highway Department & another[1] (and a companion case[2]).

Essex. October 4, 2010. - December 28, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.[3]

*Governmental Immunity. Commonwealth,* Claim against. *Municipal Corporations,* Regulations. *Practice, Civil,* Proceeding against Commonwealth, Interlocutory appeal, Injunctive relief, Preliminary injunction, Action in nature of mandamus. *Injunction. Mandamus.*

In a civil action arising from the operation by the defendant Massachusetts Highway Department (highway department) of a salt storage facility located in a town, a Superior Court judge properly denied the Commonwealth's motion to dismiss, on the ground of sovereign immunity, claims that the operation of the facility constituted a public health nuisance and that the highway department should be ordered to apply for permits for replacement private wells, where the allegations in the complaint of a relationship between, on the one hand, the town's antinuisance and private well regulations and, on the other, the legislatively mandated functions of the highway department set forth sufficient facts to raise a right to relief above the speculative level. [601-604]

In a civil action arising from the operation by the defendant Massachusetts Highway Department (highway department) of a salt storage facility located in a town, a Superior Court judge properly denied the Commonwealth's motion to dismiss, on the ground of failure to state a claim upon which relief could be granted, a count of the complaint alleging that the highway department was causing or was about to cause substantial harm to the environment and seeking injunctive relief, where, although the highway department could not be fined for its activities, it was not necessarily exempt from an order of injunctive relief issued pursuant to G. L. c. 111, § 122 [604-605]; however, the judge erred in denying the Commonwealth's motion to dismiss a claim seeking relief in the nature of mandamus against the defendant Department of Environmental Protection, where mandamus was not available to compel the performance of discretionary acts [605-606].

CIVIL ACTIONS commenced in the Superior Court Department on December 3 and 4, 2008.

---

[1]Department of Environmental Protection.

[2]Massachusetts Highway Department *vs.* Town of Boxford (town). See note 6, *infra.*

[3]Chief Justice Marshall participated in the deliberation on this case prior to her retirement.

After consolidation, a motion to dismiss was heard by *Kathe M. Tuttman,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Katherine A. Watras,* Assistant Attorney General, for Massachusetts Highway Department & another.

*Gregg J. Corbo* for town of Boxford.

BOTSFORD, J. We consider here the Commonwealth's interlocutory appeal, brought under the doctrine of present execution, from the denial of its motion to dismiss. The principal issue raised is the scope of a town's authority to regulate the operations of a State agency, and in particular a town's ability to seek judicial enforcement of its regulatory determination vis-à-vis the agency. The case concerns a conflict between the town of Boxford (town) and the Massachusetts Highway Department (highway department) arising from the highway department's operation of a salt storage facility (facility, or salt shed) located in the town.[4] The town brought suit in the Superior Court principally to enjoin the operation of the facility and certain other activities of the highway department, on the ground that the agency was in violation of the regulations of the town's board of health (board) adopted under the authority of G. L. c. 111, §§ 31 and 122.

Citing principles of sovereign immunity, the highway department and the Department of Environmental Protection[5] (DEP; collectively, Commonwealth) moved to dismiss the town's complaint. We conclude that the highway department is not immune from all municipal regulation or from suit in relation to its operation of the facility, although as a factual matter, the

---

[4]In 2009, the functions of the Massachusetts Highway Department were merged into the newly created Department of Transportation (department). See St. 2009, c. 25. The parties continue to refer to the Massachusetts Highway Department (highway department), and we do the same. See Mass. R. Civ. P. 25 (c), 365 Mass. 771 (1974). The Commonwealth asserts that the issue of sovereign immunity it has raised in this case is unaffected by the change. See G. L. c. 6C, § 18, as amended by St. 2009, c. 120, § 5.

[5]The Department of Environmental Protection (DEP) is a defendant in this action because the town seeks an order in the nature of mandamus directing the DEP to take enforcement action against the highway department for allegedly improper road salt storage. See G. L. c. 85, § 7A, as amended through St. 2009, c. 25, § 76.

doctrine of essential government functions ultimately may bar the town's claim for relief in this case. Sovereign immunity principles likewise do not prevent the town from seeking to enforce its regulations requiring permits for the installation of private drinking wells. Because they are before us, we have considered the Commonwealth's additional arguments as to the court's power to enjoin the highway department from causing damage to the environment and to enter an order in the nature of mandamus against the DEP. With respect to those arguments, we conclude that the judge correctly denied the motion to dismiss the town's claim under G. L. c. 214, § 7A, but erred in deciding to permit the town's mandamus claim to continue. We affirm in part and reverse in part the judge's denial of the Commonwealth's motion to dismiss.

*Background.* In reviewing the sufficiency of a complaint, the court accepts as true the factual allegations of the complaint, and supporting inferences that may be drawn from those alleged facts. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 625 n.7 (2008). Accordingly, we summarize the pertinent facts alleged in the town's complaint. On Topsfield Road in the town, the highway department owns and operates a salt shed in which it stores salt and other chemicals used in the removal of snow and ice from Interstate 95, State Highway Route 97, and the staging area around exit 53 of Interstate 95. The highway department has acknowledged that its release of salt has contaminated private drinking water wells in the town. The town's board of selectmen asked the highway department to relocate the salt shed to an area not in the vicinity of private drinking water wells, but the highway department has refused to do so. In 2005 and 2006, the town asked the DEP to take enforcement action against the highway department under G. L. c. 85, § 7A, on account of its storage of deicing chemicals in a manner that risked contamination of a water or groundwater supply in violation of that statute; the DEP declined to do so.

By February, 2006, the highway department began work to install replacement wells at affected private residences. In undertaking these well installations, the highway department refused to comply with the town's private water supply regulations, as set forth in the Board of Health Regulations of the Code of Boxford § 202-3 (2007) (Code § 202-3), and therefore did not apply to

the town's board of health (board) for well permits. The "shallow wells" that the highway department drilled are prohibited under Code § 202-3(E)(1) and, even with a permit, may only be installed with a variance granted by the board. The drilling for replacement wells caused "extensive environmental damage."

On November 21, 2008, relying on its authority under G. L. c. 111, § 122, to order abatement of nuisances, the board ordered the highway department to cease and desist all operations at the salt shed within seven days. The highway department notified the board that it did not intend to comply with the order. On December 3, 2008, the town filed the present action in the Superior Court seeking injunctive relief against the highway department and relief in the nature of mandamus against the DEP.[6]

The town's complaint includes four counts. In count I, the town alleges that the salt shed operations constitute a public health nuisance in violation of G. L. c. 111, § 122,[7] and seeks a preliminary injunction pursuant to G. L. c. 111, § 130,[8] ordering the highway department to cease and desist all salt shed

---

[6]We learn from the record that on December 3, 2008, the town physically blocked the entrance to the salt shed. In response, the highway department filed its own complaint in the Superior Court seeking a declaratory judgment that the town lacks the authority to regulate the highway department's functions and also injunctive relief barring the town from interfering with the operation of the salt shed. After a hearing, a judge in the Superior Court consolidated the two cases and, on December 24, 2008, issued an order enjoining (1) the town from attempting to exert any authority over the highway department's operation and use of the salt shed through the 2008-2009 winter season; and (2) the highway department from drilling wells without local permits and, as of June 30, 2009, from storing salt at the salt shed. The highway department's action is not directly at issue in this appeal.

[7]General Laws c. 111, § 122, provides, in relevant part:

"The board of health shall examine into all nuisances, sources of filth and causes of sickness within its town . . . which may, in its opinion, be injurious to the public health, shall destroy, remove or prevent the same as the case may require, and shall make regulations for the public health and safety relative thereto and to articles capable of containing or conveying infection or contagion or of creating sickness brought into or conveyed from the town . . . . Whoever violates any such regulation shall forfeit not more than one thousand dollars."

[8]General Laws c. 111, § 130, provides:

"The superior court, either before or pending a prosecution for a common nuisance affecting the public health, may enjoin the maintenance of such nuisance until the matter is decided or the injunction dissolved."

operations and abate the damage. In count II, the town alleges that the highway department is causing or is about to cause substantial harm to the environment and seeks a preliminary injunction pursuant to G. L. c. 214, § 7A,[9] again ordering the highway department to cease all salt shed operations and to abate the resulting damage. In count III, the town seeks an injunction ordering the highway department to apply for permits from the board for all replacement wells, in compliance with Code § 202-3, adopted pursuant to G. L. c. 111, § 31.[10] Finally, in count IV, the town seeks mandamus relief pursuant to G. L. c. 249, § 5,[11] requiring the DEP to institute an enforcement action against the highway department for violations of G. L. c. 85, § 7A.[12]

On February 2, 2009, the Commonwealth filed its motion to dismiss the town's complaint for lack of subject matter jurisdiction, claiming sovereign immunity, and for failure to state a claim on which relief can be granted. See Mass. R. Civ. P. 12 (b) (1) and 12 (b) (6), 365 Mass. 754 (1974). On September 1, 2009, a Superior Court judge denied the motion. The Commonwealth

---

[9]General Laws c. 214, § 7A, third par., provides, in part:

"The superior court for the county in which *damage to the environment* is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought . . . by any political subdivision of the commonwealth, determine whether such damage is occurring or is about to occur and may, before the final determination of the action, restrain the person causing or about to cause such damage; provided, however, that the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment."

[10]General Laws c. 111, § 31, provides, in part: "Boards of health may make reasonable health regulations."

[11]General Laws c. 249, § 5, provides, in part: "A civil action to obtain relief formerly available by writ of mandamus may be brought in the . . . superior court . . . ."

[12]General Laws c. 85, § 7A, states, in part: "No person shall store sodium chloride, calcium chloride or chemically treated abrasives or other chemicals used for the removal of snow or ice on roads in such a manner or place as to subject a water supply or groundwater supply to the risk of contamination . . . ." The section states the DEP "may issue regulations" as to storage of such chemicals and further states that "[a]ny violation of this section or any regulation . . . issued hereunder shall be punished by a fine not to exceed fifty dollars per day." *Id.*

appealed, and we transferred that appeal to this court on our own motion.

*Discussion.* Ordinarily, interlocutory rulings are not appealable until the final disposition of the case because they are not "final orders." *Brum* v. *Dartmouth*, 428 Mass. 684, 687 (1999). However, an order denying a motion to dismiss based on immunity from suit may be the subject of an interlocutory appeal under the doctrine of present execution. *Kent* v. *Commonwealth*, 437 Mass. 312, 315 n.6 (2002). As stated, the Commonwealth brings the present appeal under that rule, and the town does not dispute the rule's application. The Commonwealth's appeal is properly before us.[13]

1. *Lack of jurisdiction: sovereign immunity.* The highway department claims that sovereign immunity insulates it from suits brought under G. L. c. 111, §§ 31 and 122, and Code § 202-3.[14] We disagree.

In general, the Commonwealth or one of its agencies "cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed [by] statute." *DeRoche* v. *Massachusetts Comm'n Against Discrimination*, 447 Mass. 1, 12 (2006), quoting *General Elec. Co.* v. *Commonwealth*, 329 Mass. 661, 664 (1953). Sovereign immunity applies both to money judgments and more generally to "interference by the court at the behest of litigants," except when and as authorized by the Legislature. *New Hampshire Ins. Guar. Ass'n* v. *Markem Corp.*, 424 Mass. 344, 351 (1997). At the same time, however, "a statutorily created entity is not necessarily exempt from all [municipal]

---

[13]On appeal, the Commonwealth expressly advances a defense of sovereign immunity only with respect to counts I and III of the town's complaint. That it asserts sovereign immunity only as to some of the counts of the complaint does not bar interlocutory review. *Kent* v. *Commonwealth*, 437 Mass. 312, 316 (2002). We reach the Commonwealth's arguments relating to counts II and IV in this opinion because, even if the Commonwealth lacks a right at this stage to appeal from the denial of its motion to dismiss those counts, the matter is fully briefed and resolving it would be in the public interest. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

[14]The Commonwealth also asserts sovereign immunity with respect to a claim for public nuisance. The town does not assert an independent public nuisance claim in its complaint or on appeal, and we agree that all the town's claims are statutory.

regulation." *Massachusetts Bay Transp. Auth.* v. *Somerville*, 451 Mass. 80, 85 (2008) (*Somerville*). Instead, a legislatively created entity, including a State agency, is subject to local regulations to the extent that those regulations "do not interfere with its ability to fulfil its essential governmental purposes and have only a negligible effect on its operations." *Greater Lawrence Sanitary Dist.* v. *North Andover*, 439 Mass. 16, 22 (2003) (*Greater Lawrence Sanitary Dist.*), citing *Village on the Hill, Inc.* v. *Massachusetts Turnpike Auth.*, 348 Mass. 107, 118 (1964), cert. denied, 380 U.S. 955 (1965). See *Somerville, supra* at 85-86. See also *Bourne* v. *Plante*, 429 Mass. 329, 332 (1999).[15]

The Legislature has granted to local boards of health the power to "make reasonable health regulations." G. L. c. 111, § 31. The town alleges in its complaint, and we accept as true, that the town, acting through the board, has adopted Code § 202-3 under this statutory authority; and that pursuant to Code § 202-3, the town regulates the placement and construction of private wells. The Legislature also has given local boards of health an express grant of power to regulate nuisances. See G. L. c. 111, § 122 (local "board of health shall examine into all nuisances . . . within its town . . . and shall make regulations for the public health and safety relative thereto").

The power to enforce local health and environmental laws is integral to the power to regulate. Although certain procedures contemplated by the Legislature for ordering the abatement of local nuisances apply specifically to private premises,[16] the power of the Superior Court to enjoin the maintenance of a nuisance affecting the public health is not similarly limited. See G. L. c. 111, § 130 (authorizing Superior Court to enjoin main-

---

[15]The Commonwealth stated in its oral argument to this court that the town cannot regulate the operation of the salt shed without explicit statutory authorization. As the cases just cited in the text indicate, the Commonwealth's position is incorrect. The relevant inquiry is not whether there is express authorization for a municipality to apply its regulation to a State agency, but rather whether such application will impede or limit in some way the agency's ability to fulfil its legislative mandate. See *Greater Lawrence Sanitary Dist.* v. *North Andover*, 439 Mass. 16, 21-22 (2003).

[16]See G. L. c. 111, § 123 (board of health shall order owner or occupant of private premises to remove nuisances); § 124 (notice provisions for private premises nuisance removal order); and § 125 (authority of board to remove nuisance at private premises where owner or occupant fails to do so).

tenance of "common nuisance affecting the public health" while action to prosecute nuisance is pending); note 8, *supra*. A regulation under G. L. c. 111, § 31 or § 122, also may be enforced by a municipality in equity under G. L. c. 111, § 187.[17] See *Board of Health of Woburn* v. *Sousa*, 338 Mass. 547, 550-552 (1959) (where nuisance regulation could properly have been adopted under G. L. c. 111, §§ 31 and 122, board of health could enforce it in equity under G. L. c. 111, § 187).

Whether a specific regulation would have a "merely negligible effect" on a State-created entity's ability to fulfil an essential governmental function generally requires consideration of the specific facts of the case. *Somerville*, 451 Mass. at 86. See, e.g., *Greater Lawrence Sanitary Dist.*, 439 Mass. at 22. Anything more than a negligible effect on a State agency's ability to perform an essential governmental function will cause the court to decide in the State agency's favor. See *Somerville, supra*. Nonetheless, where a town has alleged sufficient facts to "raise a right to relief above the speculative level," its complaint survives a motion to dismiss. *Iannacchino* v. *Ford Motor Co.*, 451 Mass. at 636, quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). The factual allegations of the town's complaint concerning the relationship between the town's antinuisance and private well regulations and the legislatively mandated functions of the highway department meet that test.[18] Within the limits of the essential governmental function doctrine, the highway department is potentially subject to judicial enforcement of town regulations, and the Commonwealth's motion to

[17]General Laws c. 111, § 187, provides in pertinent part: "The supreme judicial or superior court, upon the application of the board of health of a town, may enforce the orders of said board relative to public health. Sections eleven and twelve of chapter two hundred and fourteen shall apply to such cases . . . ."

[18]We assume without deciding that "deicing" roads is an essential governmental function performed by the highway department; the question is only whether local regulations would have more than a "merely negligible effect" on the highway department's ability to fulfil that function. *Massachusetts Bay Transp. Auth.* v. *Somerville*, 451 Mass. 80, 86 (2008). See G. L. c. 6C, § 2 (*a*) (exercise of department powers conferred by c. 6C "shall be considered to be the performance of an essential governmental function"); G. L. c. 6C, § 3 (13) (department granted the power to "maintain . . . the state highway system").

dismiss was properly denied with respect to counts I and III of the town's complaint.

2. *Failure to state a claim.* a. *Damage to the environment.* In count II of its complaint, the town alleges that the highway department is causing or about to cause substantial harm to the environment and seeks a preliminary injunction pursuant to G. L. c. 214, § 7A. Section 7A authorizes the Superior Court to restrain any "person" causing or about to cause damage to the environment, and defines "person" to include "the commonwealth or any political subdivision thereof, [or] any administrative agency, public or quasi-public corporation or body." G. L. c. 214, § 7A, second par.[19] Section 7A applies only when "the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment." G. L. c. 214, § 7A, third par. See *Wellfleet* v. *Glaze*, 403 Mass. 79, 82-83 (1988). See also *Sierra Club* v. *Commissioner of the Dep't of Envtl. Mgt.*, 439 Mass. 738, 739 n.3 (2003) (jurisdiction under G. L. c. 214, § 7A, to hear action alleging "actual imminent damage to the environment" due to failure to comply with G. L. c. 30, § 61).

The Commonwealth does not challenge the sufficiency of the town's allegation of damage to the environment in count II. Rather, its motion to dismiss rests on the premise that the town failed to show that the highway department violated any statute, ordinance, bylaw, or regulation. The town responds by pointing to G. L. c. 111, § 122. In particular, the town contends that § 122 authorizes a board of health to issue orders requiring property owners to abate nuisances; that the board in this case did issue a cease and desist order under § 122; and that the highway department violated the order. The town reasons that by violating the order issued pursuant to § 122, the highway department violated the statute itself.

The Commonwealth's motion to dismiss was properly denied. The Commonwealth is correct that as an agency of the Commonwealth, it cannot be made subject to a fine under the final

_____

[19]Given this definition, the Commonwealth cannot and does not assert a defense of sovereign immunity with respect to the town's claim under G. L. c. 214, § 7A.

sentence of G. L. c. 111, § 122.[20] See *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.* v. *Falmouth*, 74 Mass. App. Ct. 444, 446-447 (2009) (as general rule, word "whoever" when used in General Laws does not encompass governmental agencies or municipalities). But it does not follow that the highway department is also exempt from an order of injunctive relief issued pursuant to § 122. The Commonwealth's suggestion that the town has no recourse to the courts to enforce its regulations adopted under § 122 amounts to a repetition of its claim that the highway department is immune from regulations adopted pursuant to § 122. For the reasons we have previously discussed, that claim is without merit. See *Somerville*, 451 Mass. at 85-86; *Greater Lawrence Sanitary Dist.*, 439 Mass. at 22. At trial, the town must establish that enforcement of its public health regulations in relation to the salt shed will not unduly interfere with the highway department's ability to perform its essential statutory mandate. If the town does so, it may also seek to establish that it is entitled to injunctive relief pursuant to G. L. c. 214, § 7A.[21]

b. *Mandamus.* Finally, the Commonwealth argues that count IV of the town's complaint, which seeks relief in the nature of

---

[20]The last sentence of G. L. c. 111, § 122, provides: "Whoever violates any such regulation [i.e., any antinuisance regulation adopted by a municipal board of health] shall forfeit not more than one thousand dollars." See note 7, *supra*.

[21]In its reply brief, the Commonwealth argues that G. L. c. 111, § 122, cannot form the basis for injunctive relief under G. L. c. 214, § 7A, because § 122 is not a statute the major purpose of which is to prevent or minimize damage to the environment. The Commonwealth's argument comes too late to be considered on this appeal. See *Alliance to Protect Nantucket Sound, Inc.* v. *Energy Facilities Siting Bd.*, 457 Mass. 663, 688 (2010) (claim deemed waived when raised for first time in reply brief). The Commonwealth may pursue the point on remand.

We note that the town asserts in its complaint that the highway department has violated both G. L. c. 111, § 122, and G. L. c. 85, § 7A. A major purpose of c. 85, § 7A, which prohibits the storage of road salts and other chemicals in a manner that risks contamination of a water or groundwater supply (see note 12, *supra*), would appear to be the prevention or minimization of environmental damage. Chapter 85, § 7A, defines "person" to include "the chief engineer of the state department of highways" and "the chief engineer of the Massachusetts Department of Transportation." *Id.* The facts alleged in the town's complaint arguably may be read to support a claim for relief under G. L. c. 214, § 7A, based on the highway department's alleged violation of G. L. c. 85, § 7A. We express no view on the merits of any such claim.

mandamus against the DEP, must be dismissed because mandamus is not available to compel the performance of discretionary acts. We agree. Relief in the nature of mandamus is not appropriate where the acts in question are discretionary rather than ministerial. See *Murray* v. *Commonwealth*, 447 Mass. 1010, 1010 (2006). The writ of mandamus "will not issue unless the respondent is under a legal duty to perform some particular act or acts the performance of which the court can order in definite terms and enforce if necessary." *Angelico* v. *Commissioner of Ins.*, 357 Mass. 407, 411 (1970). See *Channel Fish Co.* v. *Boston Fish Market Corp.*, 359 Mass. 185, 187 (1971).

The DEP's duties under G. L. c. 85, § 7A, clearly involve discretion and judgment. It *"may* issue [general] regulations" concerning the "place or manner of storage of" road salts and other chemicals, and *"may,* by specific order, in a particular case regulate the place where [road salts] may be used" (emphasis added). G. L. c. 85, § 7A, as amended through St. 2009, c. 25, § 76. The town asserts that while the DEP may choose either to regulate in general or to do so on a case-by-case basis, it *must* do one or the other. Nothing in the language of the statute supports such a reading. Rather, the statute plainly vests broad discretion in the DEP to act through regulations, through specific orders, or not to act at all — as the DEP sees fit.[22] Count IV of the town's complaint must be dismissed.

3. *Conclusion.* The order denying the Commonwealth's motion to dismiss is affirmed with respect to counts I, II, and III of the town's complaint, and reversed with respect to count IV. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[22]General Laws c. 85, § 7A, contains a provision requiring that "[a]ny person who uses more than one ton of such chemicals in any calendar year *shall* report" to the DEP the amount of chemicals used and stored (emphasis added). G. L. c. 85, § 7A. When "shall" and "may" are used within the same section of a statute, there is a presumption that the Legislature understood the difference. See *Commonwealth* v. *Gagnon*, 439 Mass. 826, 832 (2003). This distinction further demonstrates that the Legislature intended the DEP's functions at issue here to be discretionary.